UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

TONY HAMILTON,

        Plaintiff,                    Case No. 2:24-cv-11

v.                                          Honorable Jane M. Beckering

QUENTIN BOLTON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court previously stayed proceedings in this case and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 4.) Early mediation was conducted on August 22, 2024, but the case did not settle. (ECF No. 10.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Defendants Bolton, Schroeder, and Wyatt. The Court will also dismiss, for failure

to state a claim, the following claims against Defendants Watson and Perry: (1) any First Amendment retaliation claims against Defendant Watson premised upon "Plaintiff getting into it with [Defendant Watson's] so-called brother[-in-]law"; (2) any First Amendment retaliation claims premised upon verbal harassment; (3) any intended Eighth Amendment claims premised upon verbal harassment; and (4) any intended Eighth Amendment excessive force claim premised upon Defendant Watson spitting in Plaintiff's face. The following claims against Defendants Watson and Perry remain in the case: (1) Plaintiff's First Amendment retaliation claims premised upon Defendant Watson spitting in Plaintiff's face and Defendants Watson and Perry spitting in Plaintiff's food and throwing his trays; and (2) Plaintiff's Eighth Amendment claims premised upon the spitting on and throwing of Plaintiff's food trays.

## Discussion

### I.   Factual Allegations

Plaintiff Tony Hamilton is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP personnel in their official and personal capacities: Warden Sarah Schroeder, Grievance Coordinator Quentin Bolton, and Prisoner Counselor Amanda B. Wyatt. Plaintiff also sues the following MBP personnel in their personal capacities: Sergeant Unknown Perry and Correctional Officer Unknown Watson. (Compl., ECF No. 1, PageID.3.)

In his complaint, Plaintiff alleges that he filed a grievance about an incident that occurred on September 27, 2023, when Defendant Watson came to Plaintiff's cell and threatened him. (*Id.*, PageID.5.) According to Plaintiff, Defendant Watson called him a "nappy headed b****" and told Plaintiff that the "shit [he] got into at Baraga facility" involved Watson's "brother[-in]-law and family member." (*Id.* (asterisks added).) Defendant Watson told Plaintiff that he had an "ass

whipping" coming to him. (*Id.*) Plaintiff contends further that Defendant Schroeder was also involved in the denial of his grievances. (*Id.*, PageID.6.) According to Plaintiff, Defendant Bolton also refused to provide him grievance appeal paperwork. (*Id.*)

Plaintiff goes on to allege that Defendant Watson has made several attempts to assault Plaintiff through the bars of his cell. (*Id.*, PageID.8.) According to Plaintiff, on September 29, 2023, Defendant Watson spit in Plaintiff's face out of "retaliation of seeking revenge on [Plaintiff] for [Plaintiff] getting into it with [Defendant Watson's] so-called brother[-in-] law." (*Id.*) The next day, Defendant Watson was passing out food trays. (*Id.*, PageID.9.) Plaintiff claims that Defendant Watson spit in his food and threw his tray on the floor. (*Id.*) Plaintiff alleges further that Defendant Perry also spit in his food and threw his tray on the floor on October 8, 2023. (*Id.*, PageID.10.) Defendant Perry then told Plaintiff to "fetch that you low life black b****." (*Id.* (asterisks added).)

On October 9, 2023, Plaintiff gave Defendant Wyatt several grievances regarding Defendants Watson and Perry's behavior. (*Id.*) Defendant Wyatt sarcastically stated, "You ignorant ass color[ed] people don't realize that we good white people are family up north and this bullshit you are claiming that you are constantly being assaulted and harassed is only in your delusional ass mind and nobody [is going to] believe your black ass over us pure white people." (*Id.*) Defendant Wyatt told Plaintiff that his grievances would be "going straight in the garbage." (*Id.*)

Plaintiff also references an incident that occurred on October 5, 2023, during which Plaintiff was assaulted by multiple correctional officers, including Defendant Perry. (*Id.*, PageID.5.) Notably, Plaintiff has a pending lawsuit regarding that incident. *See Hamilton v. Perry et al.*, No. 2:23-cv-244 (W.D. Mich.). Plaintiff alleges that after the October 5, 2023, incident, he submitted numerous grievances about the assault, and that Defendant Wyatt ultimately had no

3

choice but to give his grievances to Defendant Bolton after the October 5, 2023, assault was caught on camera. (Compl., ECF No. 1, PageID.5, 12.) Plaintiff alleges that all of those grievances were rejected by Defendant Bolton. (*Id.*, PageID.5.) Plaintiff alleges further that on October 7, 2023, Defendant Schroeder was making rounds in his housing unit and stopped by his cell. (*Id.*) She told Plaintiff that she would "never let [any] low life piece of trash [such as Plaintiff] . . . disrupt her facility or put her colleagues and her family member[s] at jeopardy of them losing [their] jobs." (*Id.*) According to Plaintiff, Defendant Schroeder also noted that she would make sure that Plaintiff's grievances were denied by Defendant Bolton. (*Id.*, PageID.13.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment. (*Id.*, PageID.17.) His complaint can also be construed to assert First Amendment retaliation claims; Eighth Amendment claims premised upon verbal harassment, tampering with Plaintiff's food, and spitting in Plaintiff's face; and claims regarding Defendants Bolton, Wyatt, and Schroeder's handling of Plaintiff's grievances. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.18.)

**II.      Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted above, Plaintiff has sued Defendants Bolton, Schroeder, and Wyatt in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states

and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as declaratory and injunctive relief. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1988). Defendants Bolton, Schroeder, and Wyatt are, therefore, entitled to immunity with respect to Plaintiff's official capacity claims for damages.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot

6

have been authorized by the state and therefore cannot be considered done under the state's authority. *Pennhurst State Sch. & Hosp.,* 465 U.S. at 114 n.25.

Nonetheless, the Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In *Green v. Mansour*, 474 U.S. 64 (1985), the Supreme Court explained why the doctrine of *Ex parte Young* could not be extended to authorize retrospective relief:

> Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. *See Pennhurst, supra*, 465 U.S. at 102. *See also Milliken v. Bradley*, 433 U.S. 267 (1977). But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

*Id*. at 68.

Here, Plaintiff does not allege the existence of an official policy or practice that Defendants Bolton, Schroeder, and Wyatt continue to enforce. Nor does he suggest that the actions alleged in the complaint are likely to happen to him again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm. Plaintiff, therefore, does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Thus, Plaintiff cannot maintain his official capacity claims for declaratory and injunctive relief.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants Bolton, Schroeder, and Wyatt will be dismissed.

B.     **Personal Capacity Claims**

1.     **First Amendment Retaliation**

Plaintiff contends that all Defendants retaliated against him in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

a.     **Protected Conduct**

Plaintiff engaged in protected conduct when he filed a prior lawsuit. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). He also engaged in protected conduct when he filed grievances. *See id.*; *see also Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).[1]

Plaintiff also suggests that Defendant Watson retaliated against Plaintiff because of "[Plaintiff] getting into it with [Defendant Watson's] so-called brother[-in-]law." (Compl., ECF No. 1, PageID.8.) To the extent Plaintiff uses "getting into it" to refer to a fight, such action does not constitute protected conduct because fighting certainly violated legitimate prison regulations. *Cf. Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that a prisoner's act of

---

[1] The lawsuit that Plaintiff filed in December of 2023 also qualifies as protected conduct. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). However, Plaintiff filed this lawsuit after most of the dates referenced in the instant complaint.

8

calling a hearing officer a "foul and corrupt bitch" was not protected conduct). Accordingly, any retaliation claims against Defendant Watson premised upon "Plaintiff getting into it with [Defendant Watson's] so-called brother[-in-]law" will be dismissed.

### b. Adverse Action and Retaliatory Motive

#### i. *Defendants Watson and Perry*

Plaintiff alleges that Defendant Watson retaliated against him for filing grievances by spitting in his face, and that Defendants Watson and Perry retaliated by spitting in Plaintiff's food and throwing his trays on the floor. Taking Plaintiff's allegations as true, as is required at this stage, these First Amendment retaliation claims against Defendants Watson and Perry may not be dismissed on initial review.

Plaintiff also suggests that Defendants Watson and Perry verbally harassed him because of his complaints and grievances. The Sixth Circuit, however, has concluded that verbal harassment and minor threats do not constitute adverse action. *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003); *see also Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at *4 (6th Cir. Jul. 17, 2023) (stating "that verbal abuse, idle threats, and nonphysical harassment of prisoners, standing alone, . . . [does not] constitute an adverse action of constitutional significance"); *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."). Accordingly, any retaliation claims against Defendants Watson and Perry premised upon verbal harassment will be dismissed.

#### ii. *Defendants Bolton, Schroeder, and Wyatt*

Plaintiff suggests that Defendants Bolton, Schroeder, and Wyatt retaliated against him by denying his grievances, refusing to provide grievance appeal forms, and stating that Plaintiff's

9

grievances would be thrown in the garbage. Plaintiff also suggests that Defendants Schroeder and Wyatt verbally harassed him.

As set forth *supra*, verbal harassment does not constitute adverse action. *See Smith*, 61 F. App'x at 162; *see also Spearman*, 2023 WL 7000971, at *4. Moreover, if denying a grievance was considered adverse action, every denial would give rise to liability for retaliation under the First Amendment. The Sixth Circuit, however, has clearly held that the denial of grievances does not give rise to liability under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Moreover, many courts, including this one, have held that the denial or refusal to process a grievance is not adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Plaintiff's First Amendment retaliation claims against Defendants Bolton, Schroeder, and Wyatt will, therefore, be dismissed.

### 2. Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon Defendants' verbal harassment as well as the tampering with Plaintiff's food trays.

10

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a. Verbal Harassment

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon Defendants' verbal harassment. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to

correct every action, statement, or attitude of a prison official with which we might disagree.").[2] Accordingly, any intended Eighth Amendment claims premised upon verbal harassment will be dismissed.

### b.     Excessive Force

The Court has also construed Plaintiff's complaint to assert an Eighth Amendment excessive force claim against Defendant Watson for spitting in Plaintiff's face. (Compl., ECF No. 1, PageID.8.)

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380,

---

[2] In *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020), the Sixth Circuit concluded that "unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threat constitute[d] conduct so objectively serious as to be 'antithetical to human dignity.'" *Id*. at 541 (quoting *Hope v. Pelzer*, 536 730, 745 (2002)). The conduct in the present case did not involve either a threat to Plaintiff's life or any demonstration of the means to carry it out.

383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

14

Intentionally spitting on an inmate is certainly repugnant. However, several courts, including the Sixth Circuit and this Court, have held that allegations that prison officials spit on an inmate do not constitute the sort of force that implicates the Eighth Amendment. *See, e.g.*, *Gill v. Tuttle*, 93 F. App'x 301, 303 (2d Cir. 2004); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1–2 (6th Cir. May 1, 2000); *Spearman v. Williams*, No. 1:17-cv-1070, 2018 WL 8369416, at *6 (W.D. Mich. July 6, 2018), *report and recommendation adopted in relevant part by* 2019 WL 1233138 (W.D. Mich. Mar. 18, 2019), *aff'd in relevant part by* 2023 WL 7000971 (6th Cir. July 17, 2023). While the Court certainly cannot condone Defendant Watson's action, the Court cannot conclude, given the authority above, that the conduct rises to the level of an Eighth Amendment violation. Accordingly, any intended Eighth Amendment excessive force claim will also be dismissed.

### c.     Tampering with Food Trays

The Court has also construed Plaintiff's complaint to assert Eighth Amendment claims premised upon the tampering with his food trays. Plaintiff alleges that Defendants Watson and Perry both spit in Plaintiff's food and threw his tray on the floor on two separate occasions. (Compl., ECF No. 1, PageID.9–10.) Taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's Eighth Amendment claims against Defendants Watson and Perry premised upon spitting in and tampering with Plaintiff's food may not be dismissed on initial review.

### 3.     Failure to Act/Handling of Grievances

The Court has construed Plaintiff's complaint to assert that Defendants Bolton, Schroeder, and Wyatt failed to act in response to Plaintiff's grievances and complaints.

As an initial matter, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*,

556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Bolton, Schroeder, and Wyatt condoned Defendants Watson and Perry's conduct, or authorized, approved, or knowingly

16

acquiesced in that conduct. Moreover, their failure to act upon Plaintiff's complaints and grievances is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300.

Furthermore, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several

17

ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff has failed to state cognizable claims against Defendants Bolton, Schroeder, and Wyatt based upon their failure to act and their handling of Plaintiff's grievances and complaints.

## Conclusion

Having conducted the review required by the PLRA, the Court will dismiss Defendants Bolton, Schroeder, and Wyatt for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendants Watson and Perry: (1) any First Amendment retaliation

claims against Defendant Watson premised upon "Plaintiff getting into it with [Defendant Watson's] so-called brother[-in-]law"; (2) any First Amendment retaliation claims premised upon verbal harassment; (3) any intended Eighth Amendment claims premised upon verbal harassment; and (4) any intended Eighth Amendment excessive force claim premised upon Defendant Watson spitting in Plaintiff's face. The following claims against Defendants Watson and Perry remain in the case: (1) Plaintiff's First Amendment retaliation claims premised upon Defendant Watson spitting in Plaintiff's face and Defendants Watson and Perry spitting in Plaintiff's food and throwing his trays; and (2) Plaintiff's Eighth Amendment claims premised upon the spitting on and throwing of Plaintiff's food trays.

      An Order consistent with this Opinion will be entered.


Dated:  September 18, 2024             /s/ Jane M. Beckering
                                                           Jane M. Beckering
                                                           United States District Judge